This honorable appellate court for the Second District is now open. The Honorable Justice Mary S. Shostak presiding, along with Justice Donald C. Hudson and Justice Joseph E. Burkett. The case is number 219-0445, People of the State of Illinois, Plaintiff-Appellee v. Brian Gallas, Defendant-Appellant. Arguing for the appellant, Steve Greenberg. Arguing for the appellant. Okay, Mr. Greenberg, you can begin. You'll have 10 minutes, as Mr. Kaplan said, uninterrupted, and then the panel will ask questions. Thank you. Thank you. Good morning. A bit early this morning, and happy holidays to everyone. As far as the 10 minutes, I'm not going to just simply reread my brief or recite things for 10 minutes. So if anyone wants to, you're welcome, if anyone wants to jump in at any moment with questions long before that, I always, I don't know your feelings, but I always find that to be a more productive way to engage. Because we've written our brief, and we've said basically what we want to say in that. I know each of your honors is a judge, or I've tried cases against you, and a trial is something where we never really know what's going to happen at a trial. But a trial is a fundamental right, and a fair trial is a fundamental right. And in this particular case, Mr. Gallas elected to go to trial. He had a story he wanted to tell, he took the stand, and he told that story. Lauren, who was then his fiancee before this incident happened, had her story, and she wanted to tell her story. And each of the stories had flaws. Each of the stories admittedly had some problems. These two individuals had gone to a prenuptial dinner for Brian's brother's wedding, and had, according to Lauren, gotten in this huge knockdown, drag out fight, according to Brian, gotten in a fight a little bit less egregious than Lauren said. What wasn't disputed was that they had had quite a bit to drink that night. Lauren, in fact, had had more to drink than Brian. A few cocktails before they went, a few cocktails at dinner, and then when they got back to the room, they polished off what appears to be, by the story, a bottle of tequila and a chunk of a bottle of whiskey. And at some point, they got into a physical altercation. During that altercation, by Brian's own admission, he put his arm around the neck of Lauren, trying to restrain her as she was trying to go out of the room later at night. According to Lauren, he just strangled her at a different time, and then she went to bed next to him. They both went to sleep. She got up in the morning and snuck out. Interestingly, Lauren did not even tell this story to the police when she first met with them. She waited days to tell her story. In any event, so the case goes to trial, and at that point, there are no IPI instructions for the crime of aggravated domestic battery. The court determines that it's going to give a self-defense instruction, and it also determines at the same time that it is not going to ask the jurors to find that a domestic battery occurred. That's where the problem arises here, because aggravated domestic battery, as one of its that in the course of a domestic battery, an aggravating factor occurred. The aggravating factor in this case is the strangulation, which is an enhancement. It justifies the tougher sentence, a much tougher sentence. It takes it out of being a misdemeanor from the normal domestic battery situation. Instead, what the court did is omitted from the jury's consideration any requirement that they find that a domestic battery occurred, but told the jury at the same time that if you think that Brian strangled her, which is all the court asked them to find, it means you're finding him not guilty of domestic battery. The court instructed the jurors that finding the aggravated offense meant that you were at the same time finding him not guilty of an element of the underlying offense. This is not, unfortunately, a clean problem. This is not a clean jury instruction issue. I wish it was. This is an issue where you've got a serious problem with the jury instructions, where an element is omitted, but at the same time, the jurors are told that they are acquitting the defendant of the underlying offense. So what we essentially have here, and frankly, my research showed that I raised in the reply brief that it's kind of a reversal of the doctrine of implied acquittal, because in an implied acquittal where an element is missing, you can't later find a greater offense if there was a hung jury, but they found in the defendant's favor on one of the elements. It's the same thing here. They found the jury was told, if you find him guilty of this, you're finding him not guilty of the domestic battery. So the jury found him not guilty of the domestic battery. That was what they did here. Now, I know the state has argued that, and I expect they'll continue to argue, that this is somehow harmless error, that you need to look at everything, and of course, if there's a strangulation, that's bodily harm and so forth. But it's not. Bodily harm requires a physical injury of some type. It requires actual physical harm that you can see, that you can feel and so forth, a scratch, a bruise, something of that sort. And here we have none of that. In fact, the jurors were given a definition of strangle, and that definition can no way be reconciled with a requirement of bodily harm. So in this particular case, the only thing this court can do, because the jurors acquitted Mr. Dallas of the domestic battery element, is enter a finding of not guilty on the aggravated domestic battery. Ordinarily, maybe it could be sent back if there was a juror instruction, just a jury issue or an element missing, but here there's actually an acquittal. And so Jeffrey would require that he be acquitted of that. There was another problem with these instructions, and that's on the unlawful restraint. On the unlawful restraint, they didn't define what the act was. They just said unlawful restraint. And as the state has now conceded, there's a problem with that. So they agree that there's a problem with the unlawful restraint conviction, but what they asked this court to do is to speculate that some of the jurors may be found unlawful restraint on a permissible theory. And the court can't do that. We can't say that, well, we're going to guess that four of the jurors embrace the theory that the state concedes was defective, but other jurors probably had the right theory and they probably would have swayed the others. So the unlawful restraint conviction also is defective. And the last thing, and as I said, I only have brief comments, but the last that I wanted to touch base on were the conditions of probation that were imposed, sort of the standard conditions. Mr. Greenberg, real quickly, under the unlawful restraint, did you also argue one act, one crime? Yes, I did. Okay. I see that in your reply briefing. Did you want to touch on that real quickly? Sure. Well, I don't think you can separate out what the different acts are in this. So the unlawful restraint is the state argued. They argued two things. They argued one was the strangulation, which they concede would be inherent in the first offense, in the aggravated domestic battery. It would be the exact same thing. The state actually concedes that that violates the one act, one crime rule. But then they argue that she was somehow unlawfully restrained when he kept her in the room. My recollection of the evidence is that the only evidence that he kept her in the room was when he grabbed her as, according to him, she was trying completely naked to leave early in the morning hours. And so that would be all encompassed in the same exact act. Okay. Thank you. I'm sorry. You can move on to your next argument. Oh, no, that's fine. And really the point on the unlawful restraint is you can't now say after the fact that we concede that we put forth a theory that was a defective legal theory, but let's just get into the probation conditions. There are several conditions that are imposed, apparently a standard condition in every Lake County probation. We address these in our brief and again in our reply brief, but one of them is you can't use, possess, be around any product that contains alcohol. It's just an impractical condition. We have no quarrel with the condition that the court imposed in this case that he not drink alcohol. Court absolutely was within its rights and proper to impose that condition because of the testimony and the evidence that the parties were heavily intoxicated when the incident occurred. But you can't say to someone that you can't use everyday products. You can't say to someone, you can't use hand sanitizer because it contains alcohol. You can't say to someone that you can't frequent any establishment that primarily serves alcohol because that's so vague. How is someone supposed to determine that? And it was interesting when I was doing my research, I found out that Buffalo Wild Wings is the largest seller, the chain is the largest seller of beer in the country, although primarily serves alcohol. Their total alcohol sales are 41% of their gross revenues. Now, does that mean primarily? It might be a blessing to tell someone to stay away from Buffalo Wild Wings. That's true. That's true. But that was just the design I was trying to distinguish. We also have a quarrel with the condition that anytime someone is on probation for essentially any offense, here specifically a domestic offense, that the probation office then has carte blanche to all of their electronic devices. I understand that there's a reduced expectation of privacy, that there are legitimate reasons to say that someone who's on probation may be subject to some searches and so forth. But in today's day and age where your phone is essentially an extension of your brain for all practical purposes, an extension of your existence to say that the probation office has to be allowed access to your Facebook page, to your bank accounts, to all of that stuff is, again, it's improper. There may be a case where it's appropriate, a child pornography case certainly would be appropriate, and some other sex offenses, perhaps an identity theft case, it may be appropriate. But it is not appropriate as a standard condition in every case. Questions? Any other questions? Okay. Thank you so much for your argument. Justice Hudson, I'm going to start with you. Do you have any questions, Mr. Greenberg? Yes, I do. Good morning, Mr. Greenberg. Good morning, Your Honor. Just to try and call out the essence of some of your arguments, I take it you're arguing that the trial court's giving of IPI criminal 4-2601-R5 to the jury was an inaccurate statement that caused the jury to return legally inconsistent verdicts. That's part of your argument, correct? Yes. Okay. And as a corollary, if the state fails to prove that the defendant committed the predicate offense, which would be domestic battery here, then the defendant cannot be found guilty of the dependent offense, aggravated domestic battery, because such verdicts would be legally inconsistent. That's part of your position, correct? Yes. There'd be a missing element, correct. All right. Did the defendant object to the giving of IPI-2601-R5 in the form that it gave it in this case? Did the defendant object to that? Extensively, Judge. And it's in the record. We had an informal conference, as is common. And then when we had the formal conference, we extensively objected and explained that it was inherent element and that it had to be included. And then again, at post-trial, we raised it. And interestingly, the court thought that it wasn't an issue at all, because the court, I don't know if the trial court, I think it was the trial court's first jury trial that they had done as a judge. I don't know if they had come from more of a civil background, but they took the opinion, the court took the opinion, that by pleading an affirmative defense, that we had admitted everything anyway, which isn't accurate. In fact, even when you have an affirmative defense in a criminal case, you still can contest all of the underlying elements, except perhaps when you've gotten sanity. But yeah, I did that extensively and I can, while the state is arguing, I will get you the exact citation to that page of the record. All right. I understand the argument. And in the case of People v. Fiore, 169 Illinois Appellate 3rd 601, provides some authority for your position about the inconsistent offenses. But I wanted to ask you, are you aware of the Supreme Court's decision in People v. Jones, which was a 2003 decision, in which the Supreme Court held that defendants in Illinois can no longer challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges? Are you aware of that case? I am, but I think that that case addresses the situation where you've got someone who is convicted of some offenses and acquitted of some offenses, and the jury may have compromised or something like that in their verdict, and you can't really get into why the jury may have done what they did. Here, we've got a situation where the jury didn't sign a not guilty verdict on the domestic battery. So if we had a situation, I think, more akin to Jones, where the jury had been given the underlying domestic battery verdict and verdict forms and elements, and be given the with the element, and the jury had said, you know, we find him guilty of aggravated domestic battery, and the elements instruction said, you find a domestic battery, and you find the aggravating factor. And at the same time, the jury had found him not guilty of the underlying domestic battery, the misdemeanor. It might be more like a Jones situation, if I recall the case correctly. But here, there was no finding of domestic battery ever. So they're not really the traditional legal inconsistent verdicts where the jury has returned two verdict forms that say two different things. Here, the jury never made the decision on the domestic battery, but the court instructed them that as a matter of law, if they found this, they were finding him not guilty on the domestic battery. In fact, they didn't sign that verdict form. All right. So you're saying in essence, that Jones is distinguishable from this case? Is that the essence of your position? All right. I wanted to ask you just another couple of questions. One is I'm a little intrigued by your interpretation that the other person in the aggravated battery statute would mean someone other than the victim. Do you have any authority to cite to our attention that supports that interpretation? It's just the normal statutory, how they have it. Why would they say other person or another person like that? But wouldn't it be other person, wouldn't that mean someone other than the defendant? Well, the defendant's not going to choke himself or strangle himself. And the defendant isn't going to certainly get charged if he does it to himself. Well, you're saying it has to be. Why would we not interpret that as meaning another person would include the victim? Because of the way that the statute is written, it is a, as we say, it's sort of the disjunctive. So if you read the statute, it says a person who in committing a domestic battery strangles another individual. So it implies to me that they're talking about a third person. So for instance, someone comes and tries to intervene and break up and they get attacked. That's how I read it because it says in committing the domestic battery, if it was the same victim, it would say a person who in committing a domestic battery strangles the victim, strangles the individual instead of the word another has been inserted in there. And why insert the word another, unless you're talking about someone else than the person you're committing the domestic battery against. All right. But in any event, you don't have any cases that specifically say that. Correct? No, Judge, we're proceeding on creativity points, an original thought on that one. It's novel. I will concede that it's a novel argument, but my final question relates to your argument about the conditions of probation and restricting the establishments. The Seventh Circuit Court of Appeals took up a similar argument in the United States versus Douglas. Are you aware of that? Not by name. All right. There, the district court or the defendant not enter or patronize establishments or intoxicants with a primary item of sales such as bars, lounges and nightclubs. And in that case, the defendant made a similar argument to the one you're making in the Douglas court, rejected the defendant's argument, finding that the prohibition of patronizing establishments for alcohol as a primary item of sale did not extend to restaurants and they upheld that restriction. So just wanted to call your attention to that. Okay. I appreciate it. I will take a look at that while we're proceeding. All right. Thank you, Mr. Greenberg. That's all the questions I have at this time. Thank you. Thank you, Justice. Uh, justice for cat. Thank you, Justice Shasta. Good morning, Mr Greenberg. Somebody needs to mute their phone. Okay, I'll proceed with my questions. Mr Greenberg at page 65 99 to 602 of the record. The trial originally instructed the jury correctly that under the law, a person charged with aggravated domestic battery may be found not guilty of aggravated battery and not guilty of domestic battery or two guilty of aggravated battery or three guilty of domestic battery. And it was you who then approached the bench and said, no, judge, give this instruction, which was the erroneous instruction directing the jury that a verdict of guilty of aggravated domestic battery would mean not guilty of domestic battery. Is that correct? I don't believe that's correct, but I'm gonna directly from the record. Um, no, no doubt you are familiar with the doctrine of judicial admissions, correct? Yes. And under the doctrine of judicial admissions, uh, where a party or the any argument or evidence, correct? Uh, that is correct. And in this case, both parties acknowledged the injuries that were inflicted during the altercation, including your client who testified that he struck Lauren several times in the face in defending himself. And he also placed her in a chokehold until she calmed down, correct? Uh, that was essentially one of the things he testified to. Yes. And the United States Supreme Court, um, has said repeatedly, uh, and I'm quoting from Reed versus Ross at four 68 United States one. A defendant is bound by the tactical decisions of competent counsel, correct? Yes. And the effective judicial admissions is that they withdraw a fact from the jury's consideration and there's no need any proof of that fact, correct? Is that I'm, I'm, I don't know that I can answer that as a correct or incorrect because you're talking about testimony that came. Uh, and I, and I don't, the testimony was that he was acting, uh, in either defense or to try and calm her down. Right. But the question is bodily harm. And you in your closing argument told the jury that her injuries looked much worse because she was on different forms of medication, correct? Yes. So there's no doubt. There's no question at all in this record that there was bodily harm inflicted during the altercation, correct? Uh, that is correct. But, but how and why is, go ahead. I'm sorry. Is how and why is the question? Well, the testimony from both the victim Warren and the defendant was that these injuries, both the injuries on him and the injuries on her were inflicted during the altercation. There's no whether it was, he was trying to hurt her or, or not was what was disputed. The point to go back to justice Hudson's questions as well. There is a, there was no inconsistent verdict here because the jury did not return a verdict, correct? They did not, there was not guilty verdict. They did not return a not guilty verdict of domestic battery on paper, but they were told by the court that their finding of guilty would be a, um, uh, an acquittal of the domestic batters. You know, he had the defendant not testified. I would say that you probably had a sound argument that the case has to go back, but the defendant admitted inflicting the injuries on during the altercation, including the strangling. But he said he was acting in self-defense. The jury rejected that theory. They rejected that he was acting in self-defense at the time he, uh, strangled her. They, they never rejected that he was acting in self-defense during the rest of altercation. That's all I have. Justice. Thank you, Mr. Greenberg. Okay. Mr. Greenberg. Um, if the, um, if we would accept your argument with respect to the domestic battery and reject it with respect to the, um, uh, let's see the unlawful restraint, would we, um, be able to uphold the sentence or have to remand it for resentencing? Oh, you definitely have to remand it for resentencing because the sentence included mandatory conditions. Uh, although he's already served, um, uh, of jail time, 180 days jail time. Okay. Um, as a result of the aggravated domestic. Okay. Thank you. Um, the, the, you argue about the hand sanitizer, we all know sometimes mouthwash and if the probation department precludes the use of that, are they precluding the use of that for perhaps the defendant later coming in as an excuse and saying, well, I tested positive because I used mouthwash. Is that an unreasonable request by the probation department? If having seen over, you know, tens of hundreds of years, this type of, excuse. I I'm sorry. I don't understand the question. Well, you indicate that that's an unreasonable request for somebody not to use an item that contains alcohol. The basis behind that for probation generally is because the defendants use that as an excuse if they test positive, correct? Uh, I mean, people can, from time to time, I think you have to have an awful lot of, uh, mouthwash. You know, I've had the old, uh, on heroin, they claim they ate a hot dog with a poppy seed bun. Um, but you're not going to prohibit someone from eating hot dogs. You'd have to drink an awful lot of mouthwash to, to test positive. Um, you know, so, uh, I just think that it's, you can't have a wholesale prohibition on everybody doing it, uh, completely. I just don't think that you can, you can go that far and just say, we're just going to say no product with alcohol. Uh, you know, someone comes in and, and they have tested positive probation as an issue with it, then there'll be a hearing on it. And a judge will make a determination. And if the person offers the excuse that they were chugging mouthwash, um, if they chug enough mouthwash to, to be abused alcohol, you know, there's other ways to phrase it than just a wholesale prohibition. Okay. Thank you. And the, the prohibition on the phone or the, the request to look at the phone were, was probation not justified in the fact that after this offense, the defendant continued to call the victim? Was that, was there not, um, he did not continue. No, there was not. He, the next day after she left, there was a series, a lot of text messages where he was pleading for her to come back because it was the day of his brother's wedding and so forth. But there was never, uh, after he was arrested, any contact, any allegation in the course of these proceedings that I can recall that he ever, um, tried to contact or intimidate or do anything of any kind whatsoever. And again, that's a condition where the court can phrase it much differently. For instance, the court said no contact with her as a condition. And they could we want to see if you're having contact or she said you're reaching out to her, but to have a wholesale, we get to look at everything you've got. Um, that's just not, not proper at all. Um, may I add one? I'm sorry. I don't know if you're done with your questions. No, go ahead. Go ahead. No, I wanted to, uh, circle back to what justice Burke said for one moment for cat justice for cat justice for cat. Yes, that's okay. Right. Right. I've given him a promotion, a well-deserved promotion, uh, uh, justice Burkett. Um, the, uh, uh, where you're talking about the jury instructions and invited air. Um, I, I pulled that up on the record. You referred to page five 99. That seems to be where the court is talking about, uh, the verdict forms. Um, and the instruction that was given is exactly the instruction, uh, that, that we're complaining about. And then we, we raised the point on the, on the record, unless I'm looking, you know, I'm reading it wrong. We raised the point that we think the court has given an erroneous instruction and the court says, this is the one I was given. And, um, and then, and then it's not corrected. I mean, we, we had objected and then the court gave an instruction that the instruction the court gave there is still, is still incorrect. You gave the non-IPI instruction, Mr. Greenberg. They were all, they were all non-IPI. There were no IPIs for this offense back then. So all of them were essentially non-IPIs. We will look at the record again, Mr. Greenberg. Thank you. Anything further, sir? No, thank you. You'll, you'll have an opportunity for rebuttal after we hear, um, from the state. Thank you. Thank you. Mm-hmm. Mr. Taylor. Thank you, Your Honor. Good morning, Your Honor. Good morning, sir. Counsel, good morning. This court should affirm defendant's convictions for aggravated domestic battery and unlawful restraint for the following reasons. The jury instructions sufficiently conveyed the law to the jury and there were any errors in the instructions and the error would have been the offense of aggravated domestic battery based on a theory of strangulation does not require a third party to be strangled. Defendant's conviction of a lawful restraint does not violate the one act one crime rule and the trial court did not abuse its discretion within with the imposed probation conditions. As an initial matter, it seemed that defendant made a brand new argument at oral arguments that the injury instructions for lawful restraint were improper. This argument was never presented within the briefing, so at this stage it should be ignored by the court. In analyzing the jury instructions, reviewing courts look at the entirety of the given instructions and the closing arguments to ensure the jury were sufficiently appraised of the law. In non-IPI 11.11 and 11.12, it's true that the instructions do not specify that the defendant's harm requires some type of physical damage like bruising and bruises. The victim testified that when defendant was choking her that it was so painful that it left her covered in bruising and red marks. These are in people's exhibits 7, 8, 9, 11, and 25. The prosecutor argued during closing arguments that the that defendant's chokehold on the victim left her bruised and effectively just let her severely bruised. It seems that if the structure of these instructions were to indicate that the strangulation of itself was the bodily harm and it's backed by in this case the testimony of the defendant and the evidence presented to the jury. Additionally, the standard domestic battery instruction were given to the jury so they did know that bodily harm was a requirement within domestic battery. As it relates to IPI 26.01R, the defendants are arguing that within that particular instruction the wrong paragraph was given that possibly could have misled the jury. However, within the committee notes for that IPI, it actually specifies that the instruction that defendant is asking for should only ever be given if the lesser offense has a mens rea of recklessness. Since domestic battery has a mens rea of knowing, the court actually gave the correct paragraph within that instruction. The defendant does not seem to be arguing that the IPI in and of itself is inherently incorrect, which by Illinois case law is a very steep hill to climb. He also seems to be indicating that what was the instruction given by the court is what defense calls a reversal of implied acquittal. It's more accurate to look at the the greater offense, you're not going to be convicted of the lesser offense. With regards to the argument regarding the every domestic battery based on strangulation, the people will rely on the armies within sprees. For the unlawful restraint conviction, there were two separate counts of lawful restraint. One based upon strangulation, another based on physically preventing the victim from leaving the hotel room. Initially, during the jury instruction conference, the instructions were going to separate those two counts into separate instructions. It was defendants who did not want that type of delineation whatsoever. There's one general unlawful restraint instruction given and that's what was given to the jury. To now argue that that was a mistake, he cannot do so. He's already procedurally defaulted from his own invited error if it were to be error. Additionally, it was presented to the jury that it wasn't necessarily strangulation that prevented the victim from leaving the hotel room, but also the, I'm sorry, your honor. It was also the fact that the victim testified to the defendant, grabbing, grabbing, grabbing her, throwing her across the room, over a table, onto the bed, getting on top of her and proceeded to punch her repeatedly and bang her head against the headboard. He physically prevented her from trying to leave when she was trying to do so. And that is unlawful restraint, which is, this is a separate act from the act of strangulation. Like, the defendant argues that these are supposed to be this one big continuous act, but they are just separate distinct acts within this time frame. And finally, with regards to the probation conditions, none of the conditions were impermissibly a burden, an impermissible burden upon the defendant. With regards to the defendant not allowed to go to any business that primarily derives their income from alcohol, it's not a difficult task for defendants to understand that they're not allowed to go to bars and taverns, but will be allowed to go to a restaurant as one deals in alcohol, while the other has food, but may have alcohol as well, but food is the purpose of that business. It's the same difference between a grocery store and a liquor store. As for the searches for electronic devices, defendant downplays the text messages that the victim received after she was able to finally flee the hotel room. So, especially since he indicates within those text messages, which are people's exhibits 28, 29, 33, and 34, which indicates how extremely irate he is that he has to deal with the cops, the fact that she ran off without trying to talk to him, that she continues to fail to speak with the victim. The purpose of this particular instruction to allow searches is to ensure that defendant doesn't find some form of way to continue to make this type of harassing contact with the victim. As the 4th District indicated, any type of search instruction is implied to involve reasonableness. It's not allowing the police to arbitrarily go to defendant to just look at his phone whenever there has to be some reason for them to do so. It's for these reasons that the people asked this court to confirm defendant's convictions. Thank you. All right. Thank you, sir. Justice Hudson. Yes, thank you. Good morning, Mr. Taylor. Morning, sir. Mr. Taylor, I'd like to try and pin down your position on these instructions. The court here gave IPI 2601R5 rather than giving IPI 2601R4. Is it your position that there was no issue or no problem with the instructions in this case? Yes, Your Honor, that is my position. In addition to what I've argued within the brief, the committee notes for 26.01R state very explicitly that paragraph 4... I'm sorry, Your Honor, I got lost somewhere. It's our position that paragraph 5 is correct one to be given. That it's best to view this as some of a preemptive one act, one crime merger. That when you're going to be convicted of a greater offense, the lesser offense really has no further purpose. All right. Let me ask you this. I believe you started out your argument by making the statement you were outlining your overarching points. I believe you said that even if there was a problem with the instructions, any error would be harmless. Tell us why any error would be harmless in this case. Right. I believe the particular instruction for non-IPI 11.11 and 11.12 was that it doesn't specify that the jury find that defendant committed bodily harm through the strangulation. It was presented to the jury that the strangulation caused bodily harm. That it did cause bruising to the victim. For improper jury instructions, even if the correct instructions were given, the defendant would still be found guilty. Even if the instructions were to specify that the jury has to find proposition that the defendant's strangulation victim were to cause bodily harm, that was presented to the jury. Additionally, we look at the entire instructions and the closing arguments. The prosecutor argued that the strangulation caused harm to the victim and the jury did also receive instructions on just the standard domestic battery. There is a harmless error because even with more precise instructions, the jury would have still found guilt against the defendant. Are you saying that the closing arguments can correct erroneous jury instructions? Yes, that's under case law. Yes, under case law, closing arguments can help correct potentially erroneous jury instructions. Can help and assist, but it's not required, is it? In all cases, does it cure defective jury instructions? No, not in all cases, it just can assist the court in seeing whether or not the jury was surprised of the correct law. All right. Thank you, Mr. Taylor. That's all I have. Thank you, Your Honor. Thank you, Justice Hudson, Justin Burke, Jessica Katz. Thank you, Justice Shasta. Mr. Taylor, can you comment on the defendant's argument that he was partially acting in self defense? Um, but and the injuries were inflicted during that period of time when he was not acting in self defense, but when the injuries were inflicted, but during the strangulation itself, he was not inflicting bodily harm. Can you comment on that argument? Yes, um, yes, the defendants are testified during trial that he was the self defense. For all periods, correct? Yes, I believe I believe it was for all periods during the during the defense testimony at trial. The thing is, the jury was presented with that argument that it was self defense, that he had a legal justification to cause any bodily harm to the victim. They did not believe he had any legal justification to cause any harm to the victim. They believe the victim's testimony that he attacked her when she refused to have sex with him after they've been drinking from the party and within the room itself. And during the argument on the motion for a new trial, the post round motion, the trial court commented on the fact that the Oh, that's correct. That's in self defense, you have to admit to actually committing the harm in itself. And that's, and that's what happened in this case, he admits to conflicting the harm. So the jury does not believe it was justified, then they are believe that the harm was already committed to the defendant admitted to it. That's all I have. Thank you, Mr. Taylor. Thank you very much. Mr. Taylor, real quickly, I noticed that no one cited the case of people versus great 2017, Illinois 120958. Basically, what that case says is, bring it to the simplest terms to be found guilty of aggravated domestic battery or battery, you have to be found guilty of battery. So you have the predicate offense of battery and the dependent offense being aggravated domestic battery. How can one be found guilty of aggravated domestic battery without being found guilty of battery? And how is that inconsistent? Well, Your Honor, you're correct. In order to be found guilty of the aggravated domestic battery, you would need to prove the underlying domestic battery. You're correct about that. For the instructions in this case, as I mentioned previously, if the jury were to find that the defendant did commit the aggravated domestic battery, they would have necessarily found that the lesser domestic battery did occur, it would not be necessary. We're inferring that, correct? Is that what you're saying? Yes. Okay. But isn't it clear that the trial court gave the wrong instruction under 26.01R5 instead of giving the 26.01R4? So basically, giving the wrong instructions to the jury. And I mean, you argued forfeiture, but I think that Mr. Greenberg throughout was objecting to those instructions. How could it be forfeiture? And how is the fact that the trial court gave the wrong instruction, or harmless error, excuse me? Well, Your Honor, even if it's not forfeiture, harmless error analysis will still apply. It's whether or not, even if the correct instructions were given, would the defendant still be found guilty? In this case, we should found guilty of the aggravated domestic battery, and the answer would be yes. The jury already found him guilty of that. The issue is whether or not the paragraph 5, which says you'll be not guilty of the lesser offense, would that still be correct? Even if the correct instructions were given, the jury found him already guilty of the greater offense. But the jury instructions didn't accurately state the law. Is that not a problem? Well, it's not just, well, the jury instructions for, if you're looking at the jury instructions for the aggravated domestic battery, the proposition that the strangulation caused the bodily harm, that the evidence that the strangulation caused the bodily harm, that strangulation caused bodily harm to the victim, was not only conveyed by the victim herself, and from people's exhibits of her That's the thing. The owner had the domestic battery. You need to have the bodily harm and strangulation caused that bodily harm. Okay. I don't have any further questions. Thank you, Your Honor. Thank you very much. Thank you. Mr. Greenberg, do you have anything in rebuttal? Unmute yourself. Yes. Yes, I do. Thank you. Justice, there's a couple of things. First of all, to the last point that counsel just made, the state, in fact, argued at the close of the evidence that the offense could be proven just with strangulation, and in fact, omitted bodily harm entirely from their argument, and we cited and quoted from that in our brief. I wanted to, again, circle back to Justice Burkett's point about the verdict forms, and I now have looked at the record, and I have looked at what occurred. So we vociferously objected to the instructions. It's in the record. It begins around page 555 of the record, and it's quite extensive, our objections. It goes on and on for many pages of the record, and we're telling the court the court is not giving the proper instructions. The court ultimately decides against us. It decides we're going to give this set of instructions, and I have no choice. I have to accept that. The court then instructs the jury, and when the court instructs the jury, and this gets to what's on page 559 and so forth, the paragraph there about what forms they were being given, what verdict forms, that I then point out is incorrect, was in fact what the court instructed was what we had been advocating originally, but it was not what the verdict forms the court was giving were saying. So the jury would have gotten perhaps this instruction, but then verdict forms that didn't match up with what they were being told on page 559, and I just pulled the verdict forms so that I could see that. So all I did, I don't think that I invited error in that situation. What I did was I took the argument that I had lost, and I pointed out to the court that you are now giving the wrong instruction predicated upon the ruling that I've lost, and I suppose I could have tried to re-argue the whole point again with the court, but all I was doing was pointing out that the court had made a ruling that it was going to give instruction A, and then while the jurors are in there, it's giving instruction B, and then it's going to give jury instructions that are not consistent with instruction B, but are verdict forms that are error. That would have just fostered even more confusion and so forth. To the unlawful restraint where the state did say and has said that we invited error on it, the problem is, and I agree that we did not ask for a verdict form that said strangulation, a verdict form that said holding back or whatever the two ways were that it was charged. The problem is that it was argued both ways, and the jurors were told that either one could be a finding of guilty, and what we draw is an analogy to a murder case where you've got the jury instructed on different theories. They don't have to find a specific theory, but here the state is conceding that one of their two theories that they argued to the jury was not correct. It can't stand. You can't have a verdict based on that, so if you can't have a verdict based upon the theory that the state argued, then you can't have a verdict predicate on that. You can't say, well, but we could argue something else, or we also argued something else, and maybe they found something else. I'm happy to answer any questions if anyone has any questions. Justice Hudson, any questions? I have no questions. Thank you. Justice Burkett? I don't think... You're probably on mute. Thank you, Mr. Greenberg. I have no questions. Thank you. One question, Mr. Greenberg. Mr. O'Taylor argued the harmless error, and he makes, I think, a pretty valid point, and whether or not the court gave the 2601R5 or the 2601R4, it's probably evidence that the verdict was going to be the same. Where's the harm with the two different instructions? I mean, the one instruction, they didn't get the opportunity to say he was guilty of battery, but we're finding guilty of aggravated battery. Where's the error? Well, the error is because to accept harmless error when a jury does not find elements of the do away with the trial process completely and say, this jury, why did you go to trial at all? It was foolish to go to trial. Here, you had two competing versions of the event, and the events happened in pieces and parts, and that's important. It's not just a single event. It's an event. They go to sleep. They get up. There's more that goes on, and that's under both stories, so who knows whether the jurors thought that initially Lauren was out of line, and then later on when she went to leave the room, Brian went too far when he grabbed her around the neck. That doesn't mean that they would have found domestic battery. That doesn't mean that they would have found that particular element. They, it was a very convoluted. You're relying on the predicate and dependent offense theory. The predicate offense being the domestic battery, and okay. Yes, you have a jury who did not make the finding that there was a domestic battery, and I don't know how, you know, it can that's like saying, yeah, the person was shot to death, and the jury didn't find that he was shot, but geez, we all can look and see the guy was shot, so the defendant must have done it. You just can't do that in this situation because that's just dispensing with the trial, and there's case law that says that where you've got elements that are omitted, but not just omitted, but the really makes this case egregious. They were specifically told that a finding of guilty of one was a finding of not guilty of the other, and so we're presuming that, you know, we're presuming that they would have found an element. We're presuming that the instructions didn't confuse them. We're presuming all sorts of different things, and when you pile all of these things on top of them, there's no way that you can have any confidence in the verdict. Okay, thank you so much. I have a follow-up question. Sure, go. Mr. Greenberg, the aggravated domestic battery statute with respect to strangulation uses the terminology in committing, correct? Yes. Domestic battery, that's the same language that's used in the felony murder statute, correct? In committing a felony murder, correct? In committing a forcible felony, yes. So, under your theory, a person could commit an armed robbery, leave the store, robs a convenience store, robs the store, takes the money, and then decides, I'm going to come back and kill the witness just in case. Would that not be in the course of committing the crime? Yeah, I understand the scenario. I just want to think about it for a moment and try and put on my objective hat rather than just my defense attorney hat. I think that in that particular... Oh, you had an objective hat. Thank you. I'm kidding. I'm kidding. It comes with age. I think that in that situation, it would be very fact-dependent, but I think there'd be a problem with charging felony murder because I would draw an analogy to the situation to some of the cases where someone's in a getaway car and something happens, and they're leaving the scene of a robbery. In some situations, that can be felony murder if violence was contemplated in connection with the underlying felony. In other situations, the case law says it's not felony murder when you're fleeing from it. So, I think that that's not so clear. I would certainly argue that that's not felony murder, that that's just cold-blooded murder, that they're just killing them because they're witnesses. I think if they came back 10 seconds later, it might be different. If they came back, as we have here, hours later, you've got the situation. It's different. Here, the defendant testified that Lauren got on top of him. He was fighting back, punched her lower on her upper body and then in her face, and then he got behind her on the bed and put her in a chokehold. That was basically the summary, correct? That's the first, yeah, during the first thing. Yeah, and remember, Your Honor, Justice Burkett, there's a tremendous size discrepancy here too. Lauren is a college athlete who is six foot something and almost 100 pounds more than Brian and about four or five inches taller. Okay, thank you very much, Mr. Greenberg. That's all I have, Justice Schotts. Thank you. Anything else from anyone else? No. Okay, thank you so much, gentlemen. Thank you. We have concluded the oral arguments on this case for today. We will take the case under consideration, render a judgment in due course. We will be in recess until our next oral argument. Thank you so much. Have a happy holiday season and be safe.